IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

KEITH LEE,

                Plaintiff,

v.

DAVID EWING, KELLI WILLARD WEST,
GARY BOUGHTON, and JAMES SCHWOCHERT,[1]

                Defendants.

OPINION and ORDER

18-cv-370-jdp

---

      Plaintiff Keith Lee, appearing pro se, is currently an inmate at Columbia Correctional Institution. Lee is a practicing Muslim who fasts from sunrise to sunset during the month of Ramadan. Wisconsin prisons accommodate fasting prisoners by serving them high-calorie bagged meals after sunset. But a prisoner has to sign up for the Ramadan meals 60 days before the start of Ramadan. Lee says that he submitted a timely sign-up request last year while he was at the Wisconsin Secure Program Facility (WSPF). But he was not approved, even after he followed up when it became clear that he had not been not approved. Lee contends that depriving him of Ramadan meals violates his rights under the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc-1(a), the Free Exercise Clause of the First Amendment, and the Equal Protection Clause of the Fourteenth Amendment.

      The parties have filed cross-motions for summary judgment. I will deny Lee's motion because he is not entitled to judgment as a matter of law on any of his claims. I will grant defendants' motion in part. Lee says that defendant WSPF Chaplain David Ewing ignored his properly timed request to receive Ramadan meals, which if true would support a claim under

---

[1] I've amended the caption to include defendants' first and last names.

the Free Exercise Clause. This issue must be resolved at trial. Trial is also necessary for Lee's RLUIPA claim regarding the prison policy setting a 60-day deadline to sign up for Ramadan meals. There are factual disputes over whether the policy substantially burdened Lee, and whether the policy is the least restrictive means of furthering compelling state interests.

UNDISPUTED FACTS

The following facts are undisputed unless otherwise noted.

**A. Parties**

Plaintiff Keith Lee is a state of Wisconsin inmate who practices Islam. This case concerns his request to be placed on the list to be given special Ramadan meals in 2018. Lee was incarcerated at WSPF, in Boscobel, Wisconsin, during this time.

Defendant David Ewing was the chaplain at WSPF and defendant Gary Boughton was the warden there. Defendant Kelli Willard West was the Division of Adult Institution (DAI) religious practices coordinator. Defendant James Schwochert was the DAI administrator.

**B. DOC and WSPF food services**

During Ramadan, practicing Muslims should not eat from sunrise to sunset. WSPF's Food Services department prepares meal bags that are delivered to inmates to consume after sunset and before sunrise every day of Ramadan. Each meal bag contains a day's allotment of calories and nutrition to be eaten during non-fasting hours. But inmates have to sign up for Ramadan meals. DAI Policy and Procedure 309.61.03 governs how facilities administer religious diets: inmates have to request an accommodation at least 60 days before the initial meal. This policy applies not only to Ramadan, but to any religious special meal or fasting.

2

The two exceptions to the 60-day deadline are one for prisoners who have just been taken into custody, and second for those who have just been transferred to a new facility, if the inmate had properly requested accommodation at a previous facility. Defendant Ewing was not involved in drafting any version of this policy, and defendants say that he had no authority to depart from it.

The Ramadan meal-bag program requires considerable advance planning and coordination between the food services administrators at each DOC facility and the department dieticians and budget staff. Food Services at WSPF starts planning for Ramadan approximately three months in advance.

The content of the Ramadan meal bags is different than the regular meals because it is intended to be eaten without being warmed up and needs to last until the morning. They contain items like sandwiches, fresh fruit and vegetables, and high-calorie foods. Various types of meal bags are prepared, including the standard "general fare" bag, and bags that are Halal, plant-based, or dairy-free. There are also special bags adjusted to account for various medical needs, such as low-sodium or low-fat/cholesterol diets, or for inmates with peanut or soy allergies. The precise number of each bag depends on which inmates sign up to participate. Participation in Ramadan can vary significantly from year to year. From 2011 to 2018, WSPF had between 61 and 84 inmates participating in Ramadan.

The DOC's dietetic services director reviews each facility's proposed Ramadan menus for budgeting purposes and to ensure caloric and nutritional requirements are met. The director considers whether changes are needed because of product availability, ingredients, packaging, or updates to nutritional standards or serving sizes. If a menu needs adjustments, there may be "significant back and forth" with the facility to hammer out an acceptable menu. Dkt. 40, at

10, ¶ 29. Once a menu is approved, the DOC tries to give its vendor the menus four to eight weeks in advance of the facilities' orders to give the vendor time to acquire adequate stock.

Once food is ordered, it can take up to four weeks for an institution to receive the orders, depending on order quantity and whether products are readily available. At WSPF, Ramadan food is thawed up to two weeks in advance. Meals are prepared three to four days before they are delivered to inmates.

WSPF Food Services prepares Ramadan meals only for those inmates who signed up in advance to participate; it does not prepare extra Ramadan meals. In the event an inmate is transferred to WSPF who is participating in Ramadan, either during Ramadan or within 60 days before the start of Ramadan, Food Services will adjust the meals using the existing food supply to accommodate that inmate. But this puts a strain on Food Services' resources; they are able to accommodate no more than a few exceptions.

**C. Lee's 2018 request**

In 2017, Lee signed up for Ramadan meals in advance of the 60-day deadline and received the Ramadan meal bags. In 2018, Ramadan began on May 15. The deadline for inmates to sign up for the accommodation was thus March 17, 2018. WSPF staff gave notice of the deadline by posting the deadline on the institution's television channel, on the units, and in the chapel. (In his brief in opposition to defendants' summary judgment motion, Lee says that WSPF does not have a chapel. But he did not dispute defendants' proposed finding about it so I won't consider this fact to be disputed.)

Lee says that on March 1, 2018, he sent an "interview request" form to defendant Chaplain Ewing asking to be placed on the list for Ramadan meals, but he received no answer

from Ewing. Ewing says that he did not receive Lee's request. Ewing says that if he had received the request, he would have responded within one business day with confirmation.

On March 26, Lee noticed that other inmates received confirmation that they were on the Ramadan meal list. Lee wrote to Ewing asking if he was on the list; Ewing responded, "No the deadline was 3-17-18." Dkt. 1-1. Two days later, Lee wrote another request. Ewing responded, "Sorry I didn't get anything before the deadline." Dkt. 1-2. Lee says that he followed up by writing letters to defendants Boughton, Willard West, and Schwochert. Each of those defendants say that they did not receive Lee's letter.

Lee also filed an inmate grievance about the denial. *See* Dkt. 1-3. The institution complaint examiner contacted Ewing, who said that he had not received a request form dated March 1 from Lee or otherwise contacted him before the deadline. The grievance and Lee's appeal were dismissed.

Lee says that because was not approved for Ramadan meals, he has to choose between participating in Ramadan fasts and having adequate meals. Defendants say that he could have bought food from the canteen to eat in place of the Ramadan meals. They provide receipts showing that Lee bought more than $100 of food during the month. Nonetheless, Lee says that he lost 15 pounds during Ramadan in 2018.

Lee says that he knows that extra Ramadan meal bags were available in 2018 that he could have been given, although he doesn't explain how he knows this. Defendants say that there were rarely extra bags available and that if they made an exception for Lee, they would have to make an exception for everyone, causing the system to break down.

Lee says that, unlike Muslim inmates, Jewish inmates have been allowed to sign up for religious meals past the 60-day deadline. He provides the declaration of Nicholas R. McAtee,

who says that he is Jewish and was allowed to sign up later for Passover at WSPF in 2018 by Ewing. Defendants say that Jewish inmates were not treated differently than Muslim inmates.

ANALYSIS

**A. Summary judgment**

Summary judgment is appropriate if a moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When, as here, the parties have filed cross-motions for summary judgment, the court "look[s] to the burden of proof that each party would bear on an issue of trial; [and] then require[s] that party to go beyond the pleadings and affirmatively to establish a genuine issue of material fact." *Santaella v. Metro. Life Ins. Co.*, 123 F.3d 456, 461 (7th Cir. 1997). If either party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment against that party is appropriate. *Mid Am. Title Co. v. Kirk*, 59 F.3d 719, 721 (7th Cir. 1995) (quoting *Tatalovich v. City of Superior*, 904 F.2d 1135, 1139 (7th Cir. 1990)). "As with any summary judgment motion, this [c]ourt reviews these cross-motions 'construing all facts, and drawing all reasonable inferences from those facts, in favor of . . . the non-moving party.'" *Wis. Cent., Ltd. v. Shannon*, 539 F.3d 751, 756 (7th Cir. 2008) (quoting *Auto. Mechs. Local 701 Welfare & Pension Funds v. Vanguard Car Rental USA, Inc.*, 502 F.3d 740, 748 (7th Cir. 2007)).

## B. RLUIPA

I'll start with Lee's RLUIPA claims, because RLUIPA provides broader protection for religious liberty than does the First Amendment. *See Holt v. Hobbs*, 574 U.S. 352, 135 S. Ct. 853, 860 (2015). So if Lee's RLUIPA claims fail, his free exercise claims under the First Amendment will necessarily fail, too. *Tanksley v. Litscher*, No. 15-cv-126-jdp, 2017 WL 3503377, at *3 (W.D. Wis. Aug. 15, 2017).

RLUIPA prohibits prison officials from "impos[ing] a substantial burden on the religious exercise" of an inmate "unless the government demonstrates that imposition of the burden on that person . . . is the least restrictive means of furthering [a] compelling governmental interest." 42 U.S.C. § 2000cc-1(a). *See also Grayson v. Schuler*, 666 F.3d 450, 451 (7th Cir. 2012). To prove a RLUIPA claim, the plaintiff has the initial burden to show that he has a sincere religious belief. *Holt v. Hobbs*, 135 S. Ct. 853, 862 (2015). The parties do not dispute that Lee has a sincere belief in fasting during Ramadan.

Lee also has the burden to show that DOC's policies substantially burden his religious exercise. *See Koger v. Bryan*, 523 F.3d 789, 796 (7th Cir. 2008). If Lee makes this showing, the burden shifts to defendants to show that their rules are the least restrictive means of furthering a compelling governmental interest. *Id.*

There are two ways in which Lee says that he was deprived of meals. First, he says that he sent a sign-up request to defendant Chaplain Ewing, but Ewing did not place him on the Ramadan list. Second, shortly after the 60-day deadline had passed, Lee again asked to be signed up and Ewing denied that request, citing the DAI policy.

With the first aspect of his claim, Lee asserts that he followed the 60-day deadline but that Ewing kept him off the list anyway, violating the DAI policy. If Lee's version of the facts

7

is correct, it's hard to see how Ewing didn't violate RLUIPA: he flat-out ignored Lee's timely request to be placed on the list, which prevented Lee from receiving Ramadan meals and caused him to lose 15 pounds during the month.

Defendants concede that there is a factual dispute over whether Lee sent Ewing a timely request. They say that because Ewing gave Lee a confirmation of his request in 2017, Lee should have known to check back with Ewing before the 60-day deadline had passed. But this confirmation step wasn't a part of the formal policy, and the fact that Ewing confirmed Lee's request in 2017 doesn't mean that Lee knew he had the responsibility to check in with Ewing before the 60-day deadline.[2] Defendants don't cite any authority suggesting that the least restrictive means to regulate religious meals would include forcing prisoners to confirm with prison staff that they aren't ignoring the prisoners' requests.

Money damages are not available under RLUIPA; the statute provides only injunctive and declaratory relief. But a plaintiff is entitled to prospective injunctive relief only if "there exists some cognizable danger of recurrent violation, something more than the mere possibility." *Nelson v. Miller*, 570 F.3d 868, 882 (7th Cir. 2009) (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953)). A theoretical possibility "supported only by speculation and not evidence" will not suffice. *Id.* Lee is now at Columbia Correctional Institution, no longer subject to Ewing's control over Ramadan requests. So there's no reason to think that Lee will again be subject to Ewing's alleged interference, and so I'll deny this aspect of his RLUIPA claim as moot.

---

[2] It's undisputed that Lee did check in with Ewing after the 60-day deadline had passed. Ewing denied Lee's request, stating that he had not received Lee's earlier, timely request.

The second aspect of Lee's RLUIPA claim includes events after the 60-day deadline passed. It is undisputed that Ewing's denials of Lee's later requests followed the DAI policy: it doesn't provide any exceptions for late requests, even for inmates who say that they sent a request before the deadline. It appears that this same policy applies to Lee no matter where he is incarcerated in Wisconsin. So injunctive relief about the policy itself is not moot.

The initial question is whether the 60-day sign-up deadline is a significant burden. The concept of "substantial burden" is not expressly defined in the RLUIPA statute. I have previously concluded that

> [t]he government imposes a substantial burden on a religious exercise when it (1) compels the plaintiff to forego his religious exercise; (2) prohibits the plaintiff from performing his religious exercise; or (3) presents the plaintiff with a "'choice' of incurring a 'serious' penalty or 'engag[ing] in conduct that seriously violates [his] religious beliefs.'"

*Tanksley*, 2017 WL 3503377, at *6 (quoting *Eternal Word TV Netw., Inc. v. Sec'y of U.S. Dep't of Health & Human Servs.*, 818 F.3d 1122, 1144 (11th Cir. 2016), in turn quoting *Holt*, 135 S. Ct. at 862) (alterations in original).

Defendants contend that Lee's claim fails because the 60-day deadline itself is not a significant burden; it is a simple administrative deadline, easy to comply with. Defendants focus on the burden caused by the effort required to comply with the deadline, not the burden that follows non-compliance. Defendants do not thoroughly develop this theory, although they cite two district court cases treating the issue this way. *See Aiello v. West*, No. 13-cv-562-wmc, 2016 WL 4919969 (W.D. Wis. Sept. 14, 2016) (90-day deadline to arrange for obtaining food items for Seder plate not a substantial burden); *McDaniels v. Sherman*, No. C09-1296-JCC, 2010 WL 5620955, at *5 (W.D. Wash. Sept. 28, 2010), *report and recommendation adopted*,

9

*McDaniels v. Sherman*, 2011 WL 197441 (W.D. Wash. Jan. 21, 2011) (six-week advance sign-up deadline for participation in Eid al-Fitr feast not a substantial burden).

But this isn't how I have approached these Ramadan-meal issues in analogous free-exercise cases. I've concluded that it's the burden caused by the consequence of not complying that matters. *Riley v. Ewing*, No. 15-cv-592-jdp, 2019 WL 188511, at *6 (W.D. Wis. Jan. 14, 2019), *aff'd*, No. 19-1279, 2019 WL 4451078 (7th Cir. Sept. 17, 2019). ("[I]t is clearly established that forcing an inmate to choose between daily nutrition and religious practice is a substantial burden on the inmate's religious practices that may violate the First Amendment. Thus, a policy that completely denied Riley the ability to fast during Ramadan, or made fasting effectively impossible, would clearly impose a substantial burden on Riley's religious practice." (internal quotation and citation omitted)); *Brim v. Donovan*, No. 15-cv-658-jdp, 2017 WL 3972519, at *9 (W.D. Wis. Sept. 7, 2017) ("[F]orcing an inmate to choose between daily nutrition and religious practice is a substantial burden. That is exactly the choice that Brim was faced with because his name wasn't on the Ramadan meal list." (internal quotation and citation omitted)). And in the seminal Ramadan-meal-list case in this circuit, *Conyers v. Abitz*, 416 F.3d 580, 585 (7th Cir. 2005), the court of appeals rejected a similar argument about the relatively low burden associated with signing up for Ramadan meals. Instead the court concluded that the circumstances of the case mattered to the analysis:

> [Defendants] rest instead on the rigid and unsupported assumption that a sign-up deadline like the one imposed is a reasonable administrative requirement under any circumstances. Nothing in this record indicates that convenience and notice to prison staff justified the rejection of Conyers's request to participate in the fast, especially since he missed the notification deadline by just four days and in fact alerted the defendants that he desired to participate in the Fast of Ramadan two days before it began.

10

*Id.* at 585. So following *Conyers* and my own previous cases, I conclude that there is a fact question over whether the policy substantially burdened Lee.

Defendants contend that they should still be granted summary judgment because the policy is the least restrictive means of furthering compelling government interests. They identify the compelling government interests as "prison administration and cost control." Dkt. 26, at 10. They've provided a fairly detailed explanation of the lengthy advanced planning that goes into ordering food and preparing prisoners' meals generally and Ramadan-meal bags in particular.

RLUIPA affords some deference to officials in prison operations. "[I]n applying RLUIPA's statutory standard, courts should not blind themselves to the fact that the analysis is conducted in the prison setting." *See Holt*, 135 S. Ct. at 866. But the standard Congress enacted in RLUIPA is "exceptionally demanding" on the government. *Id.* at 864 ("Congress enacted RLUIPA . . . in order to provide very broad protection for religious liberty."). "Saving a few dollars is not a compelling interest, nor is a bureaucratic desire to follow the prison system's rules." *Schlemm v. Wall*, 784 F.3d 362, 365 (7th Cir. 2015).

Defendants' explanation of the acquisition and preparation processes for special meals satisfies me that a reasonably firm 60-day notification deadline is acceptable as part of the least restrictive means of accomplishing the DOC's interests. But that explanation does not fully address situations like Lee's, in which he alleges that he complied with the 60-day deadline and yet was denied Ramadan meals. Lee's situation illustrates the basic problem: in any system as complex as the one used to sign up for Ramadan meals in Wisconsin's prisons, mistakes will be made. In Lee's case, it's unclear at this point whether his request was lost in the prison mail, or Ewing intentionally ignored it, or Lee is lying or mistaken. But whether through malfeasance,

lack of diligence, or just accident, it is inevitable that someone who actually complied with the 60-day notice requirement will be left off the list. But DAI policy affords no exception that would correct such errors. DAI policy affords exceptions for newly transferred or newly incarcerated inmates. So Wisconsin prisons can and will make a few late changes to the Ramadan meal roster, at least when the failure to provide the 60-day notice is beyond the control of the inmate.

I accept the explanation that prison officials need a reasonably firm deadline, because they would not be able to accommodate a large number of late requests. After all, a late request to be placed on the Ramadan list is a late request for 60 special meals. But the fact that DAI allows some exceptions undercuts the argument that a strict no-exception policy is the least restrictive means of achieving the prison's need to have sufficient notice of the number of Ramadan meals. The least restrictive means would have some mechanism to correct errors of the sort Lee alleges here, in which the failure to get on the list was not the inmate's fault.

Lee filed a grievance (which defendants don't address in their briefing) but that did not definitively determine what happened. Ewing told the examiner that he hadn't received Lee's March 1 request, so the examiner recommended dismissing the grievance. There was no investigation into whether Lee lied about filing a March 1 request, the request was lost in the mail, or Ewing ignored the request. That isn't to suggest that the examiner mishandled the grievance. But it shows that the grievance system is ill-equipped to correct this type of problem and ensure that all timely filed requests are properly counted.

Defendants suggest another alternative: Ewing says that he confirms all sign-up requests. A confirmation process might correct the type of problem Lee raises, if the inmate has the opportunity to discover the lack of confirmation and to get on the list afterwards. But

that didn't seem to work for Lee, who promptly raised the issue after he realized that, unlike some of his fellow Muslim inmates, he hadn't gotten confirmation from Ewing. At that point, it was still 50 days from the start of Ramadan, but the prison strictly enforced the deadline and wouldn't accommodate Lee. And in any case, Ewing's confirmation process is not part of the DAI policy, so there's no guarantee that chaplains at other DOC facilities provide any confirmation system.

I conclude that, based on the summary judgment evidence, the state has failed to meet its burden to show that 60-day notice policy is the least restrictive means of furthering its compelling interest in getting advance notice of those who intend to participate in the Ramadan fast. The state and Lee may be able to provide additional evidence about DOC procedures and the compelling governmental interests at stake. And there are factual disputes about whether Lee made the 2018 Ramadan request and the impact of the prison's refusal to accommodate his late request. So I will deny both sides' motions for summary judgment on this aspect of Lee's RLUIPA claim.

I previously named Boughton as the defendant for this claim. But the facts show that the policy at issue is not specific to WSPF. Because Lee is no longer at WSPF, I'll substitute defendant Willard West, the DAI religious practices coordinator.

**C. First Amendment free exercise**

Lee brings parallel First Amendment free-exercise claims for damages against all of the defendants. To establish a free exercise claim, Lee must "submit evidence from which a jury could reasonably find that the defendant[] personally and unjustifiably placed a substantial burden on his religious practices." *Neely-Bey Tarik-El v. Conley*, 912 F.3d 989, 1003 (7th Cir. 2019) (quoting *Thompson v. Holm*, 809 F.3d 376, 379 (7th Cir. 2016)). A substantial burden

is one that "put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Thomas v. Review Bd.*, 450 U.S. 707, 718 (1981). In the prison context, such a burden is justified if it is "reasonably related to a legitimate penological interest." *Thompson*, 809 F.3d at 380 (citing *Turner v. Safley*, 482 U.S. 78, 89–91 (1987)).

Lee's claim about Ewing ignoring his alleged timely Ramadan-meal request survives summary judgment for the reasons stated above regarding the parallel RLUIPA claim: he alleges that Ewing thwarted his attempt to practice his religion even when he properly followed the deadline policy. Defendants do not attempt to identify a legitimate penological interest in ignoring a properly filed request. And unlike the parallel RLUIPA claim, Lee's claim for damages is not mooted by his transfer away from Ewing's reach. So Lee's First Amendment claim against Ewing will have to be resolved at trial.

That leaves Lee's claim regarding the policy itself, and Ewing's denials of his later, untimely requests under the policy. The only personal involvement that Lee says defendants Boughton, Willard West, and Schwochert had was in receiving letters that he sent them about Ewing's denials. In screening Lee's complaint, I warned him that he could not succeed on claims against these defendants unless he could show that their job duties included responding to those types of letters. Dkt. 10, at 4. *See Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009) ("[The plaintiff's] view that everyone who knows about a prisoner's problem must pay damages implies that he could write letters to the Governor of Wisconsin and 999 other public officials, demand that every one of those 1,000 officials drop everything he or she is doing in order to investigate a single prisoner's claims, and then collect damages from all 1,000 recipients if the letter-writing campaign does not lead to better medical care. That can't be right."). Lee has not

14

made that showing.[3] Even if he had, his claims regarding the policy itself against all of the defendants must be dismissed under the doctrine of qualified immunity.

The doctrine of qualified immunity shields officials from civil liability so long as their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (internal quotation omitted). A clearly established right is one that is sufficiently clear such "that every reasonable official would have understood that what he is doing violates that right." *Reichle v. Howards*, 566 U.S. 658, 664 (2012). In other words, "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). Lee bears the burden of demonstrating that his rights were clearly established to overcome qualified immunity. *Hernandez ex rel. Hernandez v. Foster*, 657 F.3d 463, 473 (7th Cir. 2011).

Lee says that it is clearly established that prison officials can't intentionally prevent religious practice without penological justification. That's true, but that proposition is far too general to resolve the question whether Ewing's responses to Lee's untimely requests violated a clearly established right. When considering whether qualified immunity applies, courts cannot "define clearly established law at a high level of generality." *Mullenix*, 136 S. Ct. at 308. The "dispositive question is 'whether the violative nature of particular conduct is clearly established.'" *Id.* (*quoting al-Kidd*, 563 U.S. at 742). In other words, "the clearly established law must be 'particularized' to the facts of the case." *White v. Pauly*, 137 S. Ct. 548, 552 (2017)

---

[3] My review of the record shows that Boughton dismissed Lee's grievance about not being placed on the Ramadan-meal list. Dkt. 1-3, at 3. But Lee does not suggest that this dismissal is a basis for his free exercise claim. Even if he did, such a claim would be dismissed under the doctrine of qualified immunity, as discussed in this opinion.

(citation omitted); *see also City of Escondido, Cal. v. Emmons*, 139 S. Ct. 500, 503 (2019) ("[T]he clearly established right must be defined with specificity.").

Lee doesn't identify a Supreme Court or Seventh Circuit court of appeals case in support of his free exercise claim. The closest precedent I can find is *Conyers*, in which the court of appeals remanded a free exercise claim brought by a plaintiff who alleged that he was not told about the Ramadan-meal deadline. 416 F.3d at 585. But the *Conyers* court did not define the scope of an inmate's right regarding either the deadline itself or notification of the deadline; it merely remanded the case to force the state to provide a deeper justification for its policy. So Lee can't overcome qualified immunity with *Conyers*. *See Riley v. Ewing*, No. 19-1279, 2019 WL 4451078, at *2 (7th Cir. Sept. 17, 2019) (upholding this court's invocation of qualified immunity on a Ramadan-meal case despite plaintiff raising *Conyers*). So I will grant defendants' motion for summary judgment on Lee's free-exercise claim about the policy and deny Lee's motion for summary judgment on those claims.

### D. Equal protection

I granted Lee leave to proceed on a claim that defendants' failure to accommodate his Ramadan fasting violated the Equal Protection Clause of the Fourteenth Amendment because prison officials overlooked the deadline rules for Jewish prisoners.

To win a discrimination claim under the equal protection clause, a plaintiff must show that he is a member of a protected class similarly situated to others who were treated better by the defendant. *Brown v. Budz*, 398 F.3d 904, 916 (7th Cir. 2005); *Felton v. Ericksen*, 366 Fed. Appx. 677, 680 (7th Cir. 2010). The plaintiff must show "discriminatory purpose," which "implies that the decisionmaker . . . selected or reaffirmed a particular course of action at least

in part 'because of' . . . its adverse effects upon an identifiable group." *Chavez v. Illinois State Police*, 251 F.3d 612, 645 (7th Cir. 2001) (internal citations omitted).

Lee provides evidence only about Ewing's actions and does not suggest that Boughton, Willard West, or Schwochert were involved the discrimination against him. So I'll grant defendants' motion for summary judgment with respect to these defendants, and I'll deny Lee's motion as it applies to them.

As for the claim against Ewing, Lee says that evidence that a prison official systematically treated members of one group unfavorably could support an equal protection claim. Dkt. 36, at 5 (citing *Diaz v. Kraft Foods Glob., Inc.*, 653 F.3d 582, 587 (7th Cir. 2011). That's correct, but Lee comes nowhere close to providing that type of evidence to support his claim. The only evidence Lee provides is the denials of his request, and a declaration from fellow inmate McAtee, a Jewish prisoner who was allowed an exception to the 60-day deadline for Passover.

Lee also contends that all he needs is a single example of differential treatment to support his claim, citing a workplace discrimination and retaliation case. Dkt. 36, at 5 (citing *Humphries v. CBOCS W., Inc.*, 474 F.3d 387, 406–07 (7th Cir. 2007) ("Thus, in terms of job titles, work duties, supervisor, and work performance histories, Stinnett and Humphries have more than sufficient similarity. A *single comparator* will do; numerosity is not required.") (emphasis added)). But the *Humphries* court cautioned that "it may be that the degree of similarity necessary may vary in accordance with the size of the potential comparator pool." *Id.* at 405. The plaintiff in *Humphries* explained at length how he and the comparator were similarly situated. *Id.* at 406. Here, all we know is that Lee and McAtee both sought exceptions from the 60-day deadline and were given different responses by Ewing. Neither Lee nor McAtee

explain anything about the circumstances surrounding McAtee's request—such as how far in advance McAtee made it, what Ewing knew about the availability of a seat at the Passover meal, or any details about the difficulty in arranging for another participant. Without more that an isolated example of Ewing coming to different conclusions about two different requests of unknown similarity, no reasonable jury could conclude that Ewing discriminated against Lee on the basis of his religion. *See Shango v. Jurich*, 681 F.2d 1091, 1104 (7th Cir. 1982) (isolated instances of differential treatment "are not presumed to be a violation of the equal protection clause. . . . Mere inconsistenc[ies] in prison management . . . may not in [themselves] constitute a cognizable equal protection claim." (internal quotations omitted)). Accordingly, I will grant defendants' motion for summary judgment on this claim and deny Lee's.

ORDER

IT IS ORDERED that:

1. Plaintiff Keith Lee's motion for summary judgment, Dkt. 18, is DENIED.

2. Defendants' motion for summary judgment is GRANTED in part as discussed in the opinion above. The following claims survive summary judgment:

   - Plaintiff's RLUIPA claim against defendant Willard West regarding denial of Ramadan meals under the 60-day deadline policy.

   - Plaintiff's free-exercise claim against defendant Ewing for ignoring his timely filed Ramadan-meal request.

3. Defendants Boughton and Schwochert are DISMISSED from the case.

Entered September 27, 2019.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge